# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHARLES MURRAY, Individually )
and as Special Administrator of the )
ESTATE OF LULA ROBERTSON, )
                                    )
         Plaintiff, )
   vs. )      Case No. 19-2148-DDC-KGG
                                      )
MANORCARE OF TOPEKA KS, )
LLC, *et al.*, )
                                    )
       Defendants. )
_____)

## ORDER ON MOTION TO COMPEL DISCOVERY

Now before the Court is Plaintiff's Motion to Compel Discovery. (Doc. 49.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED** and the objections raised by Defendant ManorCare are **overruled** as more fully set forth herein.

## BACKGROUND

Decedent Lula Robertson choked to death on August 28, 2018, at the skilled nursing facility where she was a resident, Defendant ManorCare of Topeka, LLC (hereinafter "ManorCare"). According to Plaintiff, at issue in this lawsuit is "what legal entities were responsible for ensuring ManorCare of Topeka provided the minimally acceptable standard of care." (Doc. 49, at 1.) Plaintiff alleges that all

of the Defendants "engaged in conduct resulting in an understaffed and undercapitalized nursing home thereby causing Decedent's death." (*Id*.) More specifically, the Amended Complaint alleges that "defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that ManorCare of Topeka KS, LLC was sufficiently staffed to meet the individual needs of [Decedent] during her period of residency therein." (Doc. 32, at ¶ 62.) That pleading continues that the "undercapitalization and lack of sufficient staff directly resulted in [Decedent] not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to her choking and her death." (*Id*., at ¶ 63.)

Plaintiff moves to overrule certain objections and compel production of documents responsive to Requests Nos. 5, 7, and 10 (or particular subcategories therein). (*See generally* Docs. 49, 49-1.) Plaintiff summarizes the information sought by the requests as follows:

> 1. The facility assessment federal regulations require skilled nursing home's [sic] utilize to determine the number of nursing staff necessary to meet the needs of its residents;

> 2. emails from limited custodians and topics regarding the management and staffing at ManorCare of Topeka;

> 3. budgetary documents regarding the staffing levels at ManorCare of Topeka; and what entity controlled staff levels.

4. Documents evidencing what entities controlled the operation and management of ManorCare of Topeka.

(Doc. 49, at 3.)

Plaintiff asks the Court to find that ManorCare waived the protections of the attorney/client privilege as to Requests No. 5 a., b., d., and i., No. 7, and No. 10 by failing to submit a privilege log.  (*Id*., at 4.)  Plaintiff asks the Court to overrule ManorCare's proportionality objection as to Requests Nos. 5, 7, and 10.  (*Id*., at 6.) Plaintiff also asks the Court to overrule the relevance objection as to Requests Nos. 5(i), 7, and 10 a., b., e., and f.  (*Id*., at 7-13).  Plaintiff moves for the Court to overrule ManorCare's overbreadth objection to the six-month temporal limitation Plaintiff included with Requests No. 5 a., b., and d., No. 7, and No. 10.  (*Id*., at 14.) Finally, Plaintiff asks the Court to overrule any and all "conditional objections" raised by ManorCare in response to Requests No. 5 a., b., and d., No. 7, and No. 10.  (*Id*., at n.10.)

As discussed in Section II A. 1., *infra*, the parties conferred as required by the local rules.  They could not, however, resolve their issues relating to the discovery requests.

## ANALYSIS

## I.      Standards for Discovery.

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  *Holick v. Burkhart*, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face.  *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).  Relevance is to be "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action."  *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

## II.   Plaintiff's Motion to Compel.

### A.   Privilege Log.

#### 1.   Duty to confer.

As an initial matter, ManorCare argues that Plaintiff's concerns about the lack of a privilege log are not properly before the Court because Plaintiff did not comply with the duty to confer prior to filing a discovery motion. (Doc. 50, at 9.) ManorCare argues that Plaintiff's efforts to strike the privilege objections are "premature" because, in the opinion of defense counsel, Plaintiff's efforts to confer prior to the filing the motion were inadequate. (Doc. 50, at 9.)

According to defense counsel, "[o]ne telephone conference was had between Plaintiff's Counsel and Counsel for ManorCare regarding the issues presented in the Motion before Plaintiff's Motion was filed. No follow up correspondence was sent to Defense Counsel and no additional phone call occurred." (*Id.*) As such, according to defense counsel, "[t]he prerequisites to the filing of this Motion have not been met per the Court's Scheduling Order." (*Id.* (citing Scheduling Order, Doc. No. 26 at ¶ 2(g) (which instructs that a telephone conference discussing the matter must occur, followed by correspondence to the objecting party "outlining exactly what opposing counsel seeks and the reason why the objection" is inappropriate, then an "attempt to secure a good-faith verbal conference on the issue in person or by phone.")

The Court notes the language of the Scheduling Order entered by the undersigned Magistrate Judge, which appears to require a moving party to first consult with opposing counsel by telephone, send follow-up correspondence, and

an attempt an additional telephone call. That stated, it is well-settled in this

District that "[r]easonable effort to confer requires that the parties in good faith

converse, confer, compare views, consult and deliberate, or in good faith attempt to

do so." ***Blair v. Transam Trucking***, 09-2443-EFM-KGG, 2016 WL 7117182, at

*6 (D. Kan. Dec. 7, 2016) (citation omitted); ***Walker v. Corizon Health Inc.***, No.

17-2601-DDC-KGG, 2019 WL 161511, *3 (D. Kan. Jan. 10, 2019).

> The conference mandate of 'reasonable efforts to confer'
> requires 'more than mailing or faxing a letter to the
> opposing party.' D. Kan. Rule. 37.2. … Rather, the
> parties must 'in good faith converse, confer, compare
> views, and consult and deliberate or in good faith attempt
> to do so.' '[The parties] must make genuine efforts to
> resolve the dispute by determining precisely what the
> requesting party is actually seeking; what responsive
> documents or information the discovery party is
> reasonably capable of producing, and what specific,
> genuine objections or other issues, if any, cannot be
> resolved without judicial intervention.'

***Helget v. City of Hays, Kan.***, No. 13-2228-KHV-KGG, 2014 WL 2865996, at *2

(D. Kan. June 24, 2014) (internal citations omitted).

It is undisputed that Plaintiffs' counsel communicated with defense counsel,

by more than faxing a letter or sending an email, prior to filing the present motion.

In the reply brief, Plaintiff asserts that during the parties' telephone conference,

ManorCare took the position that it was standing by the objections at issue in this

motion. (Doc. 51, at n.3.) Plaintiff argues that "[t]his is not a situation where the

parties only exchanged written correspondence," thus the requirements of local rule 37.2 were satisfied. (*Id*.) The Court agrees.

Further, even if the efforts to confer were insufficient, the Court may still address the substantive issues in Plaintiff's motion. "Despite the unqualified language of the federal and local rules, the Court, in its discretion, may choose to determine a motion to compel on its merits even when the duty to confer has not been fulfilled under certain circumstances." ***Stephenson v. Young***, No. 10-2197-KHV-KGG, 2010 WL 4961709, at *2 (D. Kan. Nov. 29, 2010) (citation omitted). The Court finds that Plaintiff's motion should be determined on its substantive merits. The Court **overrules** ManorCare's D. Kan. Rule 37.2 objection.[1]

## 2. Lack of a privilege log.

In response to Requests Nos. 5 (a, b, d, i), 7, and 10, ManorCare objects, in part, that the requests seek material protected by the attorney-client privilege and work product protections and/or that the information sought is protected by the quality assurance and peer review privileges. (*See* Doc. 49-1, at 11, 13, 16.) ManorCare did not, however, provide a privilege log as required by Fed.R.Civ.P. 26(b)(5).

---

[1] The Court notes that in raising this objection, ManorCare never actually referred to the specific local rule at issue.

Because no privilege log was provided, Plaintiff asserts that the objections should be deemed waived.  (Doc. 49, at 5.)  Plaintiff argues that

> Defendants have made no attempt to satisfy Fed.R.Civ.P. 26(b)(5) when asserting their privilege objections nor when submitting their suggestions in opposition.  Indeed, defendants failed to seek leave of Court to provide a privilege log out of time.  That level of disregard for the requirements of the Federal Rules of Civil Procedure warrants the Court deeming all privileges waived.  That being said, Plaintiffs contend that defendants have not provided a privilege log because none of the documents are actually privileged.  Thus, waiver of the privilege has no substantive effect.

(Doc. 51, at n.5.)

"[T]he party asserting attorney-client privilege and work-product protection … bears the burden of establishing that either or both apply."  ***Kannaday v. Ball***, 292 F.R.D. 640, 644 (D. Kan. 2013) (citation omitted).  "To carry that burden, [the objecting party] must make a 'clear showing' that the asserted objection applies."  *Id.* (citation omitted).

Further, the party raising attorney/client privilege and/or attorney work product objections in response to discovery requests is obligated to include a privilege log compliant with Fed.R.Civ.P. 26(b)(5)(A).  ***Progressive Northwestern Ins. Co. v. Gant***, No. 15-9267-JAR-KGG, 2017 WL 3530842, *6 (D. Kan. Aug. 16, 2017).  It is well-established in this District that "[t]he objecting party must provide enough information in the privilege log to enable the withholding party,

and the Court, to assess each element of the asserted privilege and determine its applicability." *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citations omitted).

ManorCare argues that even if Plaintiff had complied with the Scheduling Order's rules regarding the duty to meet and confer, discussed *supra*,

> Plaintiff must first show the Court that the items he seeks to compel the Defendant to produce are relevant, because the relevancy of that material is unclear on its face. Likewise, this responsibility was agreed to by the parties in the Scheduling Oder with respect to searching emails by search term. Plaintiff has made this dispute center on temporal issues, which are suspect on their face, not because of the reasonableness of the proposed time frame, but due to a complete refusal to support his relevancy argument with any fact to suggest that [Decedent's] death is in some manner the result of conduct which occurred over time.

(Doc. 50, at 9.) As discussed more specifically in following sections of this opinion, the Court generally finds that the requests at issue meet the low threshold of facial relevance. Therefore, ManorCare, as the party who raised the issue of privilege, has the duty to support that claim of privilege. *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 13-2150-CM-KGG, 2014 WL 4386147, *2 (D. Kan. Sept. 5, 2014) (citation omitted) (holding that once the low burden of relevance is established, the burden is on the party opposing the discovery requests).

The Court will not, however, find that ManorCare has waived the privilege. Rather, the Court instructs ManorCare to provide a fully compliant privilege log as to any documents withheld in response to Requests Nos. 5 (a, b, d, i), 7, and 10 within **thirty (30) days of the date of this Order** or the asserted privileges and protections will be deemed waived. ManorCare is directed to this Court's prior decisions of *Helget v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1308890, *3 (D.Kan. March 28, 2014) and *Kear v. Kohl's Dept. Stores, Inc.*, No. 12-1235-JAR-KGG, 2013 WL 3088922, *3 (D.Kan. June 18, 2013) for discussions as to what constitutes an adequate privilege log providing sufficient information to allow the other party assess the claimed to privilege This portion of Plaintiff's motion is, thus, **GRANTED in part**.

## B. Proportionality Objections.

As stated above, information sought through discovery must be proportional to the needs of the case. Fed.R.Civ.P. 26(b)(1). In making this determination, the Court must consider "the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

In the opening brief, Plaintiff states that ManorCare raises the following proportionality objection to Requests Nos. 5, 7, and 10: "[t]he cost of complying

with this request exceeds the value of the information to Plaintiff in the preparation of his case." (Doc. 49, at 6.) The Court notes, however, that this language is contained in ManorCare's response to Requests Nos. 5 and 10, not No. 7. (*See* Doc. 49-1, at 11, 13-14, 16.)

Plaintiff argues that "[t]he party resisting discovery bears the burden to support its objections based upon proportionality; it cannot refuse discovery 'simply by making a boilerplate objection that the discovery sought is not proportional.'" (Doc. 49, at 6) (quoting *National R.R. Passenger Corp. v. Cimarron Crossing Feeders*, LLC, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) (quoting Fed.R.Civ.P. 26(b) advisory committee's note to the 2015 amendment). ManorCare responds that because the requests are facially irrelevant, the burden shifts to the party propounding the discovery to establish relevance. (Doc. 50, at 7 (citing *Crumply v. Associated Wholesale Grocers, Inc*., No. 16-2298-DDC-GLR, 2017 WL 1545668 (D. Kan. April 28, 2017) (citing *Puscard Inc. v. Discovery Card Services*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

The requests at issue deal with staffing (No. 5) and certain documents, over the same six month timeframe, relating to budgets, capitalization, and management oversight (No. 10). The Court acknowledges that the requests seemingly encompass large categories of information. The Court does not find, however, that

given the claims and issues in this lawsuit, Requests Nos. 5 and 10 are facially irrelevant, as argued by ManorCare. (Doc. 50, at 7.) Thus, the burden is on ManorCare to support its proportionality objections and it has not done so. The Court thus **overrules** ManorCare's boilerplate proportionality objections as to Requests Nos. 5 and 10.[2]

### C.     Temporal Limitation.

ManorCare also objects to the temporal limitation of February 28, 2018, to August 28, 2018, Plaintiff has placed on several of the discovery requests. This objection is raised in response to Request No. 5, which is titled "Staffing." The request seeks, in relevant part, the following categories of documents:

> a.     A copy the Employee Roster and/or similar documentation, however titled, containing the names, addresses, telephone number, titles, positions, dates of hire, dates of termination, dates of re-hire, and present employment status with ManorCare of Topeka KS, LLC of each and every employee who was employed at ManorCare of Topeka KS, LLC between February 28, 2018 and August 28, 2018.

> b.     Daily Census/Staffing Positing: All 42 C.F.R. § 483.30(e) daily census/actual staff hours postings for ManorCare of Topeka KS, LLC for the following time

---

[2] The Court notes that many of ManorCare's arguments overlap and, as a result, are ill-defined. For instance, ManorCare's position is unnecessarily complicated when it intertwines the proportionality argument with its objection to Plaintiff's six month temporal limitation on certain requests. While the Court acknowledges that the issues bear some relation, the arguments would be much more focused if the discussions were broken out. That stated, the temporal issue will be discussed by the Court separately in Section II. C., infra.

period:  between February 28, 2018 and August 28, 2018.

*** 

d.     Punch Detail Data:  Complete punch detail
database for all RN, LPN, NAR/CNA and TMA working
at ManorCare of Topeka KS, LLC for the following
time period:  between February 28, 2018 and August 28,
2018.

*** 

i.      The facility assessment required by 42 CFR
Section § 483.70( e) in effect between February 28, 2018
and August 28, 2018.

*** 

(Doc. 49-1, at 10-11.)

Plaintiff argues that the six-month time period for this request is appropriate

because Plaintiffs' Amended Complaint includes a claim for punitive damages.

(Doc. 49, at 14; Doc. 32 at ¶¶ 93-109.)  Plaintiff alleges that evidence of a "pattern

of conduct," such as the understaffing alleged in this case, is relevant to a punitive

damage claim.  (Doc. 49, at 14 (citing *Walls v. MiraCorp, Inc.*, No. 09-2112-JAR,

2011 WL 1636930, at *6 (D. Kan. Apr. 29, 2011).)  Plaintiff therefore contends

that the six month time period is not unduly burdensome and allows Plaintiff to

establish a pattern of conduct resulting in Decedent's death.  (*Id*.)

ManorCare argues that this six month temporal limitation is overly broad.

(Doc. 50, at 11-12.)  It continues that based on the information it previously

provided, "Plaintiff can make every calculation that might be contained in a Facility Assessment for the time period of August 27 and 28, 2018." (Doc. 50, at 12.)

The Court finds the February 28, 2018, through August 28, 2018, time frame is not facially objectionable, thus the burden is on ManorCare to support it. While it objects to this time frame, ManorCare's arguments fail to make a specific, supported argument as to why or how the time frame is actually improper, overly broad, or disproportionate to the needs of the case. ManorCare merely seems to argue that because Decedent allegedly choked on August 28, 2018, there is no way that information relating to staffing issues on any day other can be relevant to Plaintiff's claims. (Doc. 50, at 10.)

Given the broad mandate for discovery relevance, the Court does not agree. To the contrary, the Court finds the temporal limitation suggested by Plaintiff to be quite conservative. As such, the temporal objection to Request No. 5 (a), (b), (d), and (i) is **overruled**. For these stated reasons, the Court also overrules this temporal objection as to Requests Nos. 7 and 10.

### D. Relevance.

According to Plaintiff, the federal staffing standard applicable to ManorCare is contained in 42 CFR § 483.35, which states:

> The facility must have sufficient nursing staff with the
> appropriate competencies and skills sets to provide
> nursing and related services to assure resident safety and
> attain or maintain the highest practicable physical,
> mental, and psychosocial well-being of each resident, as
> determined by resident assessments and individual plans
> of care and considering the number, acuity and diagnoses
> of the facility's resident population in accordance with
> the facility assessment required at § 483.70(e).

Plaintiff's Amended Petition includes allegations that the failure to provide adequate staffing, training, and competent staff members caused Decedent's death. (Doc. No. 32 at ¶¶ 62-69.)  Plaintiff argues that knowledge regarding the number and competency of ManorCare's staff is relevant and an essential element of Plaintiff's tort claim and claim for punitive damages.  (Doc. 49, at 8.)  Specifically relevant, according to Plaintiff, is whether ManorCare "(1) determined the number of competent staff necessary to meet the needs of its residents and/or (2) knew actual staffing levels were insufficient put them on notice of the existence of a dangerous condition."  (*Id.*)  In this context, the Court will look at the relevance of the specific requests at issue.

### 1.      Request No. 5(i).

This subsection of Request No. 5 seeks the facility assessment required by 42 CFR Section § 483.70(e) for the February to August time period.  (Doc. 49-1, at 11.)  Section 483.70(e)requires that "[t]he facility must conduct and document a facility-wide assessment to determine what resources are necessary to care for its

residents competently during both day-to-day operations and emergencies." As discussed above, and pursuant to 42 CFR §483.35, staffing levels are to be "determined by resident assessments and individual plans of care and considering the number, acuity and diagnoses of the facility's resident population in accordance with the facility assessment required at § 483.70(e)." According to Plaintiff, the information responsive to Request No. 5(i) will establish whether ManorCare "determined the number of competent staff necessary to meet the needs of its residents." (Doc. 49, at 9.)

ManorCare responds that "[t]he various studies, instruments, reports and tools referred to in the Plaintiff's requests were noted to be too ill defined to permit a response." (Doc. 50, at 14.) The Court does not agree. To the contrary, the information sought by subcategory No. 5(i) to be specifically defined. Further, the information sought by Request No. 5(i) is relevant and proportionate to the needs of the case. ManorCare's objections to this subcategory are **overruled** and the portion of Plaintiff's motion relating to Request 5(i) is **GRANTED**. ManorCare is instructed to provide responsive information **within thirty (30) days of the date of this Order**. As stated above, however, the Court has found that ManorCare has not waived its claims of attorney/client privilege and work product protection. To the extent documents are withheld on this basis, ManorCare is instructed to provide a compliant privilege log as discussed above.

## 2.  Request No. 7.

Request No. 7 is titled "E-mail" and seeks email to or from the director of nursing, assistant director of nursing, MDS coordinator, and staffing coordinator for a six month period in 2018.  The e-mail sought is limited to those containing the following search terms:  Acuity, Budget, Census, short staff, under staff, more staff, sufficient staff, ration, PPD, and HPPD.  (Doc. 49-1, at 12-13.)

As to these search terms, ManorCare points to language in the Scheduling Order entered in this case.  (Doc. 50, at 15.)  The Scheduling Order specifically provides that "Defendant will not be required to search records by specific terms… unless an independent basis or need for the electronic material is shown and which satisfies all prerequisites for the production of any documents under Rule 26." (Doc. 26, at 5.)

Plaintiff's motion indicates that the information responsive to these search terms provides the "'best evidence'" of ManorCare's "knowledge regarding the adequacy – and potential danger – of its staffing levels." (Doc. 49, at 11.)  Plaintiff continues that the custodians "include only those individuals charged with overseeing the facility and its staffing levels," the terms are "narrowly tailored" to identify communications showing the number of nursing staff based was on resident census rather than needs of the residents, and certain of the listed terms would identify party admissions as to allegations contained in Plaintiff's

Complaint. As such, the Court finds that Plaintiff has identified a sufficient need for the documents that satisfies Fed.R.Civ.P. 26. ManorCare's objection based on the language of the Scheduling Order is **overruled**.

ManorCare acknowledges that, based on their objections, no emails were produced in response to Request No. 7. (Doc. 50, at 16.) It argues that "[t]he request is too broad, will ensnare too much irrelevant material and fails when a proportional analysis is applied. This effort is too expensive and likely to generate too much unimportant or protected information for the needs of the case." The Court finds that ManorCare's expense argument to be unsupported and conclusory. ManorCare "does not detail the monetary expenses it will face by producing the ESI requested" by Plaintiff. *See **Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.***, No. 12-2350-SAC, 2014 WL 806122, *4 (D. Kan. Feb. 28, 2014). Neither in the response brief nor in the surreply does ManorCare provide an "estimate of hours and cost per hour to produce or review such information … ." *Id*. Further, "[n]o affidavit detailing the costs of production was provided." (*Id*.)

As such, the Court **overrules** any objections related to the expense and/or burdensomeness of running these ESI searches. Because of showing of relevancy established by Plaintiff, the Court instructs ManorCare to run the search queries as enumerated by Plaintiff in Request No. 7. Depending on the amount of

information generated by these search terms, ManorCare may choose to ask the Court to revisit the issue of proportionality.

ManorCare also states its concern as to the confidentiality and privacy considerations of employees and patients regarding the e-mail responsive to Request No. 7. It is well-settled in this District that the production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order. ***Benney v. Midwest Health, Inc.***, 2019 WL 3066435, *19 (D.Kan. July 12, 2019) (citing ***High Point SARL v. Sprint Nextel Corp.***, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011)). Simply stated, "'[a] concern for protecting confidentiality does not equate to privilege.'" ***High Point SARL***, 2011 WL 4008009, at *2 (citation omitted). This objection is **overruled**.

The Court thus **GRANTS** Plaintiff's motion as it relates to Request No. 7. ManorCare t is instructed to provide responsive information **within thirty (30) days of the date of this Order**. As stated above, however, the Court has found that ManorCare has not waived its claims of attorney/client privilege and work product protection. To the extent documents are withheld on this basis, ManorCare is instructed to provide a compliant privilege log as discussed above.

3. **Request No. 10.**

Request No. 10 is titled "Capitalization and Management Oversight." (Doc.

49-1, at 15.) While Plaintiff has moved to compel a supplemental response to

Request No. 10 generally, as to the issue of relevance, Plaintiff's motion only

addresses subcategories a., b. e., and f. (Doc. 49, at 12-13), which seek the

following categories of documents:

> a.      Budget:  Subject to an agreed confidentiality
> agreement, all documents and/or electronically stored
> information, including but not limited to, budget
> schedules, communications, preliminary budget drafts,
> budget meeting minuets/memos, used to evaluate and
> establish the ManorCare of Topeka KS, LLC budget in
> effect between February 28, 2018 and August 28, 2018.
>
> b.      Budget Variance Reports:  Subject to an agreed
> confidentiality agreement, all Monthly Budget Variance
> Reports generated at any time February 28, 2018
> and August 28, 2018.
>
> ***
>
> e.      The Line of Credit and/or Credit Facility
> Agreement applicable to ManorCare of Topeka KS, LLC,
> in effect on August 28, 2018 (with all financial
> information redacted).
>
> f.      Any financial guaranty executed by any defendant
> applicable to ManorCare of Topeka KS, LLC, in effect
> on August 28, 2018 (with all financial information
> redacted).

(Doc. 49-1, at 15-16.)

As to subcategories a. and b., Plaintiff has limited the request to nursing staff

budgets and nursing staff budget variance reports as opposed to all budgets.  (Doc.

49, at n.9.)  Plaintiff contends that these more limited categories of information are relevant to Plaintiffs' claims that staff was not provided "based on an ever-changing resident acuity but instead based upon budgets authored and/or approved by other party defendants … ."  (*Id*., at 12.)  Plaintiff claims that staffing budgets were "aimed at cutting costs and holding ManorCare … accountable for staying within the budget."  (*Id*.)  Plaintiff continues that the nursing staff budget "and how much the actual staff varied from the budget" is relevant to Plaintiffs' claims.  (*Id*.)  Further, Plaintiff continues that he is "without recourse to support this claim without the nursing staff budget."  (*Id*.)

As for subsections e. and f. requesting the line of credit or any financial guaranty applicable to ManorCare on the date of Decedent's death, Plaintiff contends this information relates to "who exercised control" over ManorCare or had the ability to do so.  (*Id*., at 13.)  Plaintiff continues that a financial guaranty regarding ManorCare "is evidence of managerial or operational involvement" by the other Defendants who, according to Plaintiff, "prioritized revenue over resident care through operational and managerial decisions … making financial liabilities contained in a Guaranty relevant."  (*Id*.)  Finally, Plaintiff contends that credit line is relevant because the documents will show

> (1) the defendants other than the ManorCare of Topeka obtained a single credit line to operate the multiple facilities in their chain and used the receivables from each nursing home to collateralize the line without

permission from the administrator at each facility; (2) the receivables were then deposited into a depositary account for each facility and 'swept' to a single account in the name of an entity other than ManorCare of Topeka; (3) the credit line required minimum census and EBITA for each facility and if any single facility defaulted on its obligations then a single event of default occurred affecting other non-defaulting facilities; (4) the line also made each entity joint and severally liable for every other entity's obligations.

(*Id.*)  Plaintiff continues that, if true, such "facts are evidence of a joint venture and go to the heart of the allegations that this was a not a standalone nursing home and instead operated and managed by all of the defendants."  (*Id.*)

ManorCare objected, in part, as to relevance and proportionality.[3]

According to ManorCare,

Plaintiff's effort to uncover the amount of money ManorCare handles each day, given the overhead, expenses, supplies, salaries and the other costs associated with the operation of a skilled nursing facility, is merely an effort to attempt to post numbers at trial that are relevant to nothing.  There is no factual support for any punitive award at this time.  The material sought has nothing to do with [Decedent] or her alleged injuries from choking.  The realm of the information is undetermined.  It is not limited to dietary issues, the patient, the aide or nurse whose conduct is at issue or any other fact even remotely close to being relevant.  … For instance, Plaintiff wants all 'communications' used to 'evaluate' and establish the ManorCare 'budget.'  … Plaintiff seeks all reports provided by ManorCare to 'any other entity.'  … Plaintiff wants bonus and incentive

---

[3]  The issue of proportionality relating to Request No. 10 is also discussed in Section II, B., *supra*.

> plans, for 'any person working at ManorCare' which
> would include employees, contractors and people who
> are not under the Defendant's control or whose
> information is nowhere near relevant, like the person who
> cuts the grass on the grounds. … Financial guaranty's
> [sic] and lines of credit have nothing to do with this case.

(Doc. 50, at 16-17.)  ManorCare continues that the information sought by Request

No. 10 is "not appropriate as the material it seeks is not relevant, is too invasive

and expensive given the needs of the case."  (*Id.*, at 17.)

ManorCare states that it previously advised Plaintiff of the relationship and

roles of the various Defendants, provided a chart showing these relationships, and

explained that "[n]one of the other Defendants had any role or input into the

treatment or care of [Decedent]."  (*Id.*, at 18.)  ManorCare continues that

> [a]ny other information about a specific relationship, the
> existence of or location of documents as well as the
> propriety of the joinder of any party would be best served
> by the service of appropriately specifically tailored
> individual interrogatories designed to access the
> information, as opposed to a scattershot, overbroad,
> irrelevant, ensnaring dragnet of requests to produce
> which seek financial and managerial records
> indiscriminately.  The cost associated with gathering and
> producing everything which could fall within the broad
> descriptions far exceeds the value of the case.

(*Id.*)

As a general rule, it is well-established in this District that a party is "free to

choose the manner and type of discovery they propound."  ***White v. Union Pac.***

***R.R. Co.***, No. 09-1407-EFM-KGG, 2011 WL 721550, at *2 (D. Kan. Feb. 22,

2011); *see also* **McCloud v. Board of Geary County Comm'rs**, No. 06-1002-MLB, 2008 WL 3502436, at *2 (D. Kan. Aug. 11, 2008) (citing **Audiotext Comm'ns Network, Inc. v. U.S. Telecom, Inc.**, No. 9402395–GTV, 1995 WL 625962, at *5 (D. Kan. Oct. 5, 1995)).  Generally, Courts will not interfere with these choices. **McCloud**, 2008 WL 3502436, at *2.

Subcategory a. of Plaintiff's Request No. 10  (Doc. 49-1, at 15), while all-encompassing, is not overbroad and disproportionate to the needs of the case given the facts and claims at issue.  This is particularly true given that Plaintiff limited the subcategory to nursing staff budgets.  Subcategory 10. b., seeking monthly nursing staff budget variance reports generated at any time between February 28, 2018, and August 28, 2018, to be narrowly tailored, unambiguous, relevant to Plaintiff's claims, and proportionate to the needs of the case.

Subcategory 10. e. seeks the line of credit and/or credit facility agreement applicable to ManorCare of Topeka, in effect on August 28, 2018, while subcategory 10. f. asks for any financial guaranty executed by any Defendant applicable to ManorCare of Topeka.  (*Id*., at 16.)  These subcategories are both narrowly tailored and relevant to the issue of punitive damages.  ManorCare argues that Plaintiff has yet to provide support for a claim of punitive damages.  These attacks go to the substance of Plaintiff's claims.  Whether or not the claims Plaintiff brings in this case are valid and supported is a question to be answered at

trial or by dispositive motion, not by discovery motion. Plaintiff should be allowed to engage in discovery in an effort to glean facts that support the punitive damages claim.

The Court thus **GRANTS** the portion of Plaintiff's motion relating to subcategories 10 a., b., e., and f. ManorCare is instructed to provide responsive information **within thirty (30) days of the date of this Order**. Again, however, the Court has found that ManorCare has not waived its claims of attorney/client privilege and work product protection. To the extent documents are withheld on this basis, ManorCare is instructed to provide a compliant privilege log as discussed above.

### E. Conditional Objections.

Finally, Plaintiff contends that ManorCare raised various conditional objections to Requests No. 5 a., b., and d., No. 7, and No. 10 "but ultimately produced documents for a two-day period." (Doc. 49, at n.10.) In response to Request No. 5, for instance, ManorCare provides a laundry list of boilerplate, unsupported objections, including "overbroad, unduly burdensome," "not reasonably calculated to the discovery of admissible evidence,"[4] and "intended to

---

[4] The "reasonably calculated" standard has not been used in federal court since the 2015 amendment to Fed.R.Civ.P. 26. Although the court still considers relevance, the language of Fed.R.Civ.P. 26 defining relevance as "reasonably calculated to lead to the discovery of admissible evidence" was replaced in the amended Rule "because of it was often misused to define the scope of discovery and had the potential to 'swallow any

annoy, embarrass, oppress" ManorCare.  (Doc. 49-1, at 11.)  ManorCare then states that "[s]ubject to and without waiving the objections asserted," it provides certain responsive documents limited to August 27 and 28, 2018.  (*Id*., at 11-12).  Similar objections were lodged in response to Requests Nos. 7 and 10, although ManorCare did not provide responsive documents.  (*Id*., at 13-14, 16.)

Conditional objections occur 'when a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections.'" *Taylor v. LM Ins. Corp.*, No. 19-1030-JWB, 2019 WL 5696861, *7 (D. Kan. Nov. 4, 2019) (quoting *U, Inc. v. ShipMate, Inc.*, No. 14-2287-JTM-TJJ, 2015 WL 3822731, *3 (D. Kan. June 19, 2015)).  As this Court has previously held, "[a]nswering discovery requests 'subject to' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *Benney v. Midwest Health, Inc.*, No. 17-2548-HLT-KGG, 2019 WL 3066425, *5 (D.Kan. July 12, 2019) (citing *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 14-1136-JAR, 2015 WL 4044977, *2 (D. Kan., Jan. 29, 2015) (internal citation omitted)).

---

other limitation.'" *Brown v. Panhandle E. Pipeline Co. L.P.*, No. 16-2428-JAR-TJJ, 2018 WL 263238, at *2 (D. Kan. Jan. 2, 2018).  As such, in order to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.

"To be clear, such objections 'preserve nothing and serve only to waste the time and resources of both the parties and the court.'" ***Taylor***, 2019 WL 5696861, at *7 (citation omitted). Courts in this District have called such conditional answers both "invalid" and "unsustainable.'" ***Young v. Physician Office Partners, Inc.***, No. 18-CV-2481-KHV-TJJ, 2019 WL 4256365, at *4 (D. Kan. Sept. 9, 2019) (citation omitted). "Objections may not be reserved; they are either raised or they are waived." *Id*. (citation omitted). Courts in this District also "have held 'whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands.'" *Id*. (citation omitted).

ManorCare's response brief does not address the issue of conditional objections. (*See generally* Doc. 50.) Rather, ManorCare does not discuss the subject until its surreply. (*See* Doc. 57.) As such, the argument is waived. *Cf. **Minshall v. McGraw Hill Broad. Co.***, 323 F.3d 1273, 1288 (10th Cir. 2003) (holding that an argument raised for the first time in a reply brief is waived). ManorCare's conditional objections raised in response to Request No. 5 are therefore **overruled**.


**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 49) is **GRANTED** and the objections of ManorCare are **overruled** as more fully set forth above.

**IT IS SO ORDERED.**

Dated this 10th day of April, 2020, at Wichita, Kansas.

s/ Kenneth G. Gale
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE