IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHARLES MURRAY, Individually and as Special Administrator of the ESTATE OF LULA ROBERTSON,<br><br>Plaintiffs,<br>vs.<br><br>MANORCARE OF TOPEKA KS, LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 19-2148-HLT-KGG<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON MOTION CHALLENGING CONFIDENTIAL DESIGNATION**

Now before the Court is Plaintiffs' "Motion Challenging the Confidential Designation of Certain Materials Produced by Defendants." (Doc. 124.) Having reviewed the submissions of the parties (including the documents at issue), Plaintiffs' motion is **DENIED**.

**BACKGROUND**

Decedent Lula Robertson choked to death on August 28, 2018, at the skilled nursing facility where she was a resident, Defendant ManorCare of Topeka, LLC (hereinafter "ManorCare"). According to Plaintiff, at issue in this lawsuit is "what legal entities were responsible for ensuring ManorCare of Topeka provided the minimally acceptable standard of care." (Doc. 49, at 1.) Plaintiffs allege that

1

Defendants "engaged in conduct resulting in an understaffed and undercapitalized nursing home thereby causing Decedent's death." (*Id*.) More specifically, the Amended Complaint alleges that "defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that ManorCare of Topeka KS, LLC was sufficiently staffed to meet the individual needs of [Decedent] during her period of residency therein." (Doc. 32, at ¶ 62.) That pleading continues that the "undercapitalization and lack of sufficient staff directly resulted in [Decedent] not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to her choking and her death." (*Id*., at ¶ 63.)

Plaintiffs move to overrule the confidential designations Defendants have placed on certain documents in accordance with the Protective Order (Doc. 25) entered in this case. Pursuant to the Protective Order entered in this case, "confidential information" is defined as

> information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties. For purposes of this Order, the parties will limit their designation of "Confidential Information" to the following categories of information or documents:
>
> 1. Medical records;
> 2. Personnel files;

2

>   3. Tax returns;
>   4. Financial statements and records;
>   5. Proprietary business records;
>   6. Trade secrets;
>   7. Records whose disclosure is restricted or prohibited by statute;
>   8. Complaints by residents; and,
>   9. Documents or materials relating to other claims.
>
> Information or documents that are available to the public may not be designated as Confidential Information.

(*Id*., at 2-3.)  The Protective Order also includes the following provision regarding challenges to a confidential designation:

> The designation of any material or document as Confidential Information is subject to challenge by any party.  … A party that elects to challenge a confidentiality designation may file a motion that identifies the challenged material and sets forth in detail the basis for the challenge; … .  **The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality.**  Until the court rules on the challenge, all parties must continue to treat the materials as Confidential Information under the terms of this Order.

(*Id*., at 8 (emphasis added).)

Although Defendants designated as confidential almost 7,000 documents – constituting every page they have produced – the present motion relates to less than 40 of the documents.  (Doc. 124, at 1, 5; Doc. 128 (sealed).)

## ANALYSIS

3

The Protective Order in the present case is a "blanket" order, which "requires counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." ***Bartholomees v. Signator Investors, Inc.***, No. 03-2081-GTV, 2003 WL 22843174, at *1 (D. Kan. Nov. 25, 2003). Thereafter the designated information is protected under the order unless challenged by the opposing party. (*Id*.) "[E]ven though a blanket protective order permits all documents to be designated as confidential, a party must agree to only invoke the designation in good faith." (*Id*., at *2.)

Defendants argue that Plaintiffs have "no good cause … to lessen the protection" for the information at issue. (Doc. 130, at 2.) Defendants also argue that Plaintiffs have "fail[ed] to articulate for what purpose they are asking this Court to compel Defendants' to de-designate such documents as Confidential." (*Id*., at 3.) Without citing any authority to support their position, Defendants continue that Plaintiffs "bear the burden of demonstrating why it is necessary to exhaust judicial time and resources in order to obtain their requested de-designation of Defendants' Confidential and sensitive documents." (*Id*.)

Defendants are clearly misguided. Once Plaintiffs have challenged the designation, "the party seeking the protection bears the burden of proof to justify retaining a designation of confidentiality." ***Bartholomees***, 2003 WL 22843174, at

4

*2. "Notably, the burden of proving confidentiality never shifts from the party asserting that claim – only the burden of raising that issue." (*Id*. (citation omitted).)  Defendants are correct, however, that they must show that the information has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties.  (Doc. 25; Doc. 130, at 3-4 (citation omitted).)[1]

In this regard, Defendants assert that the documents at issue consist entirely of internal email communications.  (Doc. 130, at 4.)

> Most of these emails relate to internal business management and operational analysis, discussions and advice between [a] consultant … an employee of a separate entity that is not a party to this action and has a consulting agreement with Manor Care of Topeka, KS, LLC, and Manor Care of Topeka Administrator Brandon Smith-Ziph.  The emails capture discussion regarding census data and trends regarding the same, financial and budgeting information, and discussion with a facility consultant regarding strategy.  These documents were kept confidential by Defendants and are considered by Defendants to contain competitive and highly sensitive information the release of which would harm Defendants' business operations.  Defendants do not share this information with their competitors nor is it available to the public through any governmental agency.

---

[1] The language from the case cited by Defendants for this proposition is dicta. *See* **Luttrell v. Bannon**, No. 17-2137-HLT-GEB, 2018 WL 4469276, at *3 (D. Kan. Sept. 18, 2018).  That court was quoting language from the actual Protective Order at issue in that particular case, not reaching a legal conclusion.  That stated, the Protective Order in the present case employs similar language.

(*Id*.)  Defendants also correctly point out that the Court, in previously ordering production of these documents, indicated that the private or confidential nature of produced information "could be governed by a protective order."  (Doc. 58, at 19.)

According to Defendants, the email communications "related directly to Defendants' business strategy, business systems, decision-making processes, and templates for Defendants' business model."  (Doc. 130, at 5.)  Further, the communications are asserted to include discussions of budgetary strategies.  (*Id*., at 6.)

Plaintiffs do not dispute the nature of these business-related communications.  Rather, Plaintiffs argue that because the nursing home at issue has been sold, "there is no risk of disclosure of confidential business information." (Doc. 131, at 2.)  Plaintiffs do not cite a case directly on point for this assertion. The Court is not persuaded that merely selling the facility automatically makes information relating to its prior financial performance any less sensitive or worthy of confidential designation to the entity that now owns the facility.

Plaintiffs also reply that they "are not seeking to declassify these documents as confidential for the use in any other proceeding."  (*Id*., at 3.)  Rather, Plaintiffs contend they "simply seek to bring the issue of public interest before the Court in a case where defendants have produced 6,919 pages of documents in this litigation

6

and every single page has been marked 'Confidential-Produced Pursuant to Protective Order' contrary to the law in this District." (*Id*.)

Although Plaintiffs are not required to provide justification for their challenge to the designations, Court finds this reasoning to be unpersuasive. The mere fact that every page produced through discovery has been designated as "confidential" does not, in and of itself, facially invalidate the designations.

After review of the pages submitted (Doc. 128, sealed), the Court finds that Defendants have provided adequate justification for their designations. Plaintiffs' motion is, therefore, **DENIED**. This ruling does not necessarily mean that these documents would be entitled to be filed under seal or provided with other special treatment if used as evidence at trial or in summary judgment briefing. The issue here is whether the documents should be treated as confidential within the meaning of the Protective Order. The public may have a sufficient interest in the litigation and resolution of this case such that the public's interest in seeing relevant documents may outweigh their protection as confidential.

**IT IS THEREFORE ORDERED** that Plaintiffs' "Motion Challenging the Confidential Designation of Certain Materials Produced by Defendants" (Doc. 124) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2021, at Wichita, Kansas.

                     s/ K<small>ENNETH</small> G. G<small>ALE</small>
                     HON. KENNETH G. GALE
                     U.S. MAGISTRATE JUDGE