IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES MURRAY, Individually )
and as Special Administrator of the )
ESTATE OF LULA ROBERTSON, )
)
        Plaintiffs, )
  vs. )   Case No. 19-2148-HLT-KGG
)
MANORCARE OF TOPEKA KS, )
LLC, *et al.*, )
)
        Defendants. )
_____)

**MEMORANDUM & ORDER ON**
**MOTION TO RECONSIDER ORDER ON PLAINTIFFS' MOTION**
**TO STRIKE COMPARATIVE FAULT DESIGNATIONS**

NOW BEFORE THE COURT is Plaintiffs' Motion to Reconsider (Doc. 199) this Court's prior Order (Doc. 198) on Plaintiffs' Motion to Strike Defendants' Comparative Fault Designations (Doc. 195).[1] After review of the parties' submissions, the motion (Doc. 199) is **DENIED**.

---

[1] As a result of the District Court's Order granting summary judgment to Defendant HCR ManorCare and dismissing it from the case (Doc. 244), there is currently only one Defendant remaining – ManorCare of Topeka, LLC. Because the expert designations and prior briefing at issue were filed on behalf of multiple Defendants, the Court will refer to "Defendants" throughout this Order.

1

# BACKGROUND

A.  **Nature of Case and Underlying Designations.**

Plaintiff, acting for himself and the Estate of Lula Robertson, alleges Robertson died on August 28, 2018 as a result of Defendants[2] failure to adequately staff their Topeka, Kansas nursing home.  Defendants generally deny Plaintiff's allegations.

Pursuant to the Scheduling Order entered in this case, comparative fault designations were due by December 6, 2019.  (Doc. 26.)  On that date, Defendant Manorcare of Topeka KS, LLC filed its comparative fault designation, identifying American Medical Response and Topeka Fire Department "[i]f investigation and discovery reveal negligent assessment, care and treatment of Lula Robertson from August 28, 2018, to the date of her death."  (Doc. 41.)  Also on that date, Defendants HCR Healthcare, LLC, HCR Manorcare, Inc., and Promedica Health System, Inc filed their comparative fault designation which, in relevant part, identified the same two parties with the same language.[3]  (Doc 42.)

---

[2] Defendants are three Delaware limited liability companies (Manorcare of Topeka KS, HCR Healthcare, and HCR Manorcare) and one Ohio corporation (ProMedica Health System) which, the Plaintiffs allege, owned or operated the nursing home where decedent resided.

[3] All told, Defendants' comparative fault designations identify 12 individuals/entities with the "if investigation and discovery reveal" language.  (Docs. 41, 42.)

**B.      Plaintiffs' Prior Motion to Strike (Doc. 195).**

In the underlying motion to strike, Plaintiffs argued that the designations are improper because Defendants failed to "actually state [they] will be comparing fault against anyone, only that they might at some point in the future." (Doc. 195, at 2.) Plaintiffs contend that, as a result, they "continued to litigate this case of the belief that there would be no comparative fault at issue." (*Id*., at 3.) The Court notes that Plaintiffs did not, however, object to the comparative fault designations at the time of their filing or at any time prior to filing the present motion last week.

Defendants expert designation of Dr. Jeffrey Kerr, filed on March 2, 2022, arguably compares fault with unnamed EMS personnel. (*See generally* Doc. 176-1.) The report makes numerous references to apparent mistakes made by paramedics – removing the I-gel airway and leaving decedent's airway "open to free flowing emesis," failing to timely identify decedent's heart rhythm, improperly delaying the administration of epinephrine, failing to evaluate decedent's airway with a laryngoscope, and inappropriate management of decedent's airway. (Doc. 176-1, at 10-11.) Plaintiffs' underlying motion argued that the expert designation does not constitute a supplemental designation of comparative fault "as it fails to identify the purported at fault individuals or entities. Indeed, there were multiple emergency responding entities and individuals at the August 28, 2018 scene." (Doc. 195, at 4.)

Plaintiffs further contended that they first became aware that Defendants intended to compare the fault of Scott Hunt and Malcom Gillum during the parties' mediation on June 14, 2022. (*Id.*) Hunt and Gillum were responding EMS paramedics to the decedent's August 28, 2018, choking event. Plaintiffs complained that the names of Hunt and Gillum "appear nowhere in the defective designations of comparative fault filed December 6, 2019, nor in Dr. Kerr's report." (*Id*.) Plaintiffs argued that "[a]ny permitted comparison of fault at this stage of litigation would constitute significant prejudice to plaintiffs and undue delay in a case that has been pending since March 16, 2019." (*Id*.) Defendants responded to the underlying motion by arguing that the comparative fault designations are appropriate because 1) they timely identified parties with whom they intended to compare fault; they questioned Plaintiffs' experts "concerning fault and actions of paramedics" and defense expert Dr. Kerr's report "fully explained" their allegations of comparative negligence; and 3) Plaintiffs chose not to depose Dr. Kerr or identify rebuttal experts. (*See generally* Doc. 197.)

**C.     The Court's Underlying Order Denying Motion to Strike (Doc. 198).**

In denying Plaintiffs' prior motion to strike the designations, the undersigned Magistrate Judge acknowledged that Defendants' designations where not sufficiently informative. (Doc. 198, at 6.) That stated, the Court found that there would be no undue prejudice to Plaintiffs by allowing Defendants'

4

designations to stand because Plaintiffs were arguably aware that Defendants potentially intended to compare fault for the past two and a half years since the designations were filed.  (*Id*.)

Also, the Court found that Defendants expert designation of Dr. Jeffrey Kerr, filed on March 2, 2022, clearly informed Plaintiffs that Defendants intended to contend unnamed EMS personnel were negligent.  (*Id*. (citing Doc. 176-1, at 10-11).)  The undersigned held that Plaintiffs were aware of Defendants' position regarding the potential fault of third parties and made no attempt to seek clarification, propound discovery, or move to strike the designations when Dr. Kerr's expert report was served, which was three and a half months before Plaintiffs filed the motion to strike and two and half months before the close of discovery.  (*Id*., at 7.)  The Court held that allowing Plaintiffs to sit on their objections and then strike the designations after the close of discovery would be manifestly prejudicial to Defendants and in contravention of the spirit of Fed.R.Civ.P. 1.

**D.    Plaintiff's Motion for Reconsideration (Doc. 199).**[4]

---

[4] In the time since Plaintiff filed the motion to reconsider, the District Court granted the Motion for Summary Judgement filed by HCR ManorCare and denied Plaintiff's Motion to Amend the Pretrial Order (Doc. 244).  The District Court also denied Plaintiff's motion to exclude certain of Defendants' expert opinions (Doc. 245) and Plaintiffs' spoliation of evidence motion (Doc. 246).

In moving for reconsideration, Plaintiffs initially argue that the Court incorrectly applied the Fed.R.Civ.P. 15 standard, focusing on the potential prejudice to Plaintiffs. (Doc. 199, at 2.) According to Plaintiffs, the Court should have applied the Rule 6 standard, requiring a showing of excusable neglect. (*Id*.) In determining whether neglect is "excusable," the Court must consider the following factors (in addition to "all relevant circumstances surrounding a party's omission"):

> (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay, including whether it was under the control of the movant; and (4) whether the movant acted in good faith.

***First Magnus Fin. Corp. v. Star Equity Funding, LLC***, No. 06-2426-EFM-JPO, 2009 WL 10688188, at *2 (D. Kan. Feb. l8, 2009) (citation omitted). Plaintiffs argue that Defendants fail to discuss why their insufficient designations constituted excusable neglect. (Doc. 199, at 4.)

Defendants respond that they "did not argue that their conduct constituted excusable neglect because Defendants did not neglect to identify the parties with whom it sought to compare fault." (Doc. 216, at 5.) In support of this position, Defendants point to the following facts:

- Defendants timely identified American Medical Response and its agents as parties with whom they would seek to compare fault when Defendants

6

- timely served their Designations of Comparative Fault (Docs. 41 and 42).
- Defendants identified American Medical Response, Scott Hunt, and Malcolm Gillum in their initial Rule 26 disclosures and their supplemental Rule 26 disclosures.
- The depositions of Scott Hunt and Malcolm Gillum were conducted more than two years ago and counsel for both parties questioned Messrs. Hunt and Gillum extensively concerning their care and treatment of Lula Robertson.
- Plaintiff's retained expert witnesses, Drs. Jentzen and Matuschak, were questioned extensively about the roles of Scott Hunt and Malcolm Gillum and their potential fault in causing Lula Robertson's injuries and these experts were both prepared to address these questions during their depositions, suggesting that Plaintiff's counsel was aware of Defendants' intent to compare fault to these parties and militating against Plaintiff's claim of surprise.
- On March 2, 2022, Defendants served their designation of expert witnesses including the expert report of Dr. Jeffery Kerr, which specifically detailed the actions of the ambulance personnel (American Medical Response) and explained how, in his opinion, those actions caused or contributed to cause Lula Robertson's injuries.

(*Id*., at 4-5.)

Plaintiffs next argue that they "had no duty to serve discovery on defendants to ascertain the nature of their defective comparative fault designation. The designation is defective, and it was incumbent on the defendants to recognize and correct that error." (Doc. 199, at 4.) In response, Defendants double-down on the

argument that Plaintiffs neglected to "timely challenge Defendants' comparative fault designations, which were filed two and a half years ago." (Doc. 216, at 6.)

Even applying the excusable neglect standard, the Court is required to consider "all relevant circumstances surrounding [Defendants'] omission… ." *First Magnus Fin. Corp*, 2009 WL 10688188, at *2. As outlined by Defendants above, and summarized in the factual portion of this Order, the Court finds that the totality of circumstances presented would establish that Defendants' failure to submit a more specific designation is excusable in this instance. The March 2, 2022, designation informed Plaintiffs that Defendants intended to contend unnamed EMS personnel were negligent. (Doc. 176-1, at 10-11.) Plaintiffs were aware of Defendants' position regarding the potential fault of third parties and made no attempt to seek clarification, propound discovery, or move to strike the designations when Dr. Kerr's expert report was served, which was three and a half months before Plaintiffs filed the motion to strike and two and half months before the close of discovery.

The Court is unpersuaded by Plaintiffs' position that alerting Defendants to this deficiency would be in contravention of the Canons of the ABA Model Code of Professional Responsibility. (*See* Doc. 199, at 4.) Such objections and/or follow-up discovery would be both customary and in the best interests of one's client and justice. Further, the Court reiterates that allowing Plaintiffs to sit on

their objections and then strike the designations after the close of discovery would be manifestly prejudicial to Defendants and in contravention of the spirit of Fed.R.Civ.P. 1. Plaintiffs' motion for reconsideration (Doc. 199) is, therefore, **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Reconsider (Doc. 199) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 21st day of December, 2022, at Wichita, Kansas.

                                  s/Kenneth G. Gale
                                  HON. KENNETH G. GALE
                                  U.S. MAGISTRATE JUDGE